UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARLON BELL,

    Petitioner,

v.

    Case Number 1:06-CV-15688
    HONORABLE THOMAS L. LUDINGTON
    UNITED STATES DISTRICT JUDGE

ANDREW JACKSON,

    Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS**

    Petitioner Marlon Bell, presently confined at the Mound Correctional Facility in Detroit, Michigan, has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 through counsel Douglas W. Baker. The petitioner was convicted by a jury in the Wayne County Circuit Court of two counts of first-degree felony murder, Mich. Comp Laws § 750.316; two counts of armed robbery, Mich. Comp Laws § 750.529; and one count of conspiracy to commit armed robbery, Mich. Comp Laws §§ 750.157a; 750.529. Petitioner was sentenced to life imprisonment without parole for the first-degree felony murder convictions and life imprisonment for the armed robbery and conspiracy to commit armed robbery convictions.

    Petitioner contends that the evidence was insufficient to convict him of the charges, that the trial court violated his right to due process when it arbitrarily refused to allow trial counsel to use peremptory strikes to excuse two white, male jurors, without first conducting an inquiry pursuant to *Batson v. Kentucky,* that the trial court's instruction concerning accessory after the fact was misleading, and finally, that the trial court refused to permit Petitioner to call defense witnesses on his behalf. The respondent has filed an answer to the petition, asserting that the claims are procedurally defaulted and/or lack merit. The Court agrees that Petitioner's claims are either

procedurally defaulted or non-cognizable. The petition will therefore be denied.

I.

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court. Petitioner's counsel has provided a detailed statement of facts in his petition for writ of habeas corpus, which the respondent has not contested in its answer. The Court will therefore accept the factual allegations contained within the habeas petition insofar as they are consistent with the record, because the respondent has not disputed them. *See Dickens v. Jones,* 203 F. Supp. 2d 354, 360 (E.D. Mich. 2002). Moreover, the Michigan Court of Appeals and the Michigan Supreme Court provided a fairly lengthy statement of facts in their opinions. Because the facts of this case have been repeated numerous times, they need not be repeated here in their entirety. Therefore, only a brief overview of the facts is required. *See Nevers v. Killinger,* 990 F. Supp. 844, 847 (E.D. Mich. 1997).

Petitioner was convicted for his participation in the robbery and shooting deaths of Chanel Roberts and Amanda Hodges in Detroit, Michigan on July 29, 1999. Petitioner's two co-defendants, Troy King and Matthew Bell were convicted of various offenses at separate trials.

Petitioner appealed his conviction on six separate grounds. The Michigan Court of Appeals initially addressed all six grounds and affirmed Petitioner's conviction. *People v. Bell,* No. 233234 (Mich.Ct.App. October 2, 2003). Petitioner filed a motion for reconsideration as to his claim involving the trial court's refusal to allow him to peremptorily challenge the two white, male jurors. Petitioner's motion sought reconsideration only as to this claim, but did not seek reconsideration on the other issues that had been rejected by the Michigan Court of Appeals in its initial opinion.[1] On

---

[1] *See* Motion for Reconsideration [Part of this Court's Dkt. Entry # 8-5].

reconsideration, the Michigan Court of Appeals agreed that the trial court's refusal to follow the three-step analysis under *Batson v. Kentucky, infra,* before denying Petitioner his peremptory challenges was a structural error which required reversal of Petitioner's convictions. *People v. Bell,* 259 Mich. App. 583; 675 N.W. 2d 894 (2003). Because the Michigan Court of Appeals reversed Petitioner's conviction on this ground, they declined to address any of the other issues that Petitioner had raised on his original appeal. *Id.* at 597, n. 14.

The Wayne County Prosecutor filed an application for leave to appeal, in which the prosecutor argued that the trial court did not err in denying Petitioner his peremptory challenges, and that if there was any error, it was harmless. Petitioner's counsel filed an answer to the application for leave to appeal, in which counsel argued that the application for leave to appeal should be denied. Petitioner's brief specifically indicated that "the single issue" before the Michigan Supreme Court was whether the Michigan Court of Appeals erred in determining that the trial court's arbitrary denial of Petitioner's statutory right to use his peremptory challenges was *per se* reversible. Petitioner's counsel did not file a cross-appeal or otherwise argue that the Michigan Court of Appeals erred in denying his other issues. [2]

The Michigan Supreme Court granted leave to appeal and ultimately reversed the Michigan Court of Appeals' decision. The Michigan Supreme Court held that defense counsel's pattern of strikes against Caucasian males established a *prima facie* showing of discrimination based on race. The Michigan Supreme Court further concluded that the trial court cured any initial error in denying defense counsel the opportunity to provide race-neutral reasons for using peremptory challenges and

---

[2] The prosecutor's application for leave to appeal to the Michigan Supreme Court and Petitioner's answer brief are part of this Court's Dkt. Entry 8-8.

that defense counsel failed to furnish race-neutral reasons for the use of peremptory challenges against Caucasian male prospective jurors. The Michigan Supreme Court concluded that the trial court did not clearly err in finding purposeful discrimination on the part of defense counsel. Finally, the Michigan Supreme Court concluded that any denial of the statutory peremptory challenge was subject to harmless error review. *See People v. Bell,* 473 Mich. 275; 702 N.W.2d 128 (2005); *Opinion Corrected on Rehearing*, 474 Mich. 1201; 704 N.W. 2d 69 (2005).

Petitioner subsequently filed a motion in the Michigan Court of Appeals to file a supplemental brief with respect to the other five issues which had originally been considered and rejected by the Michigan Court of Appeals in its original opinion. The Chief Clerk of the Michigan Court of Appeals returned the pleadings because Petitioner's case was no longer pending before that court and nothing in the Michigan Supreme Court's order suggested that the case had been remanded to the Michigan Court of Appeals.[3] Petitioner then filed a motion to amend order of remittitur, in which he asked the Michigan Supreme Court to direct a remand to the Michigan Court of Appeals for that court to resolve the five remaining issues on appeal that it had not resolved when it reconsidered its original opinion. On November 21, 2005, the Clerk of the Michigan Supreme Court returned the motion to Petitioner's counsel, finding that the motion amounted to a second motion for rehearing, which the Michigan Court Rules do not recognize.[4]

Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

I. Marlon Bell's convictions of murder, robbery, and conspiracy violate due process because the evidence was insufficient to convict him of any crime except accessory

---

[3] *See* Letter from Sandra Schultz Mengel, Chief Clerk of the Michigan Court of Appeals, dated October 20, 2005 [Petitioner's Appendix B].

[4] *See* Letter from Corbin R. Davis, Supreme Court Clerk, dated November 21, 2005 [Petitioner's Appendix D].

after the fact.

II. Judge Townsend deprived Marlon Bell of his rights to due process of law when, without any of the inquiry mandated by Batson v Kentucky, or its progeny, he arbitrarily refused to allow defense counsel to use peremptory strikes to excuse two white, male jurors.

III. Judge Townsend denied Marlon Bell his right to due process by giving instructions that made it seem that the offense of accessory after the fact was just a way of aiding and abetting the underlying robberies and murders.

IV. Judge Townsend denied Marion Bell his Sixth Amendment rights to present witnesses in his own behalf and present a defense by refusing to allow the defense to call witness Jocarroll George to testify that she saw Marlon Bell at a funeral at about the time the prosecution alleged he was in a room with Troy King plotting the robbery/murders.

II.

A prisoner's writ of habeas corpus challenging a state court's judgment on the merits must demonstrate that (1) the "decision was contrary to, or involved an unreasonable application of, clearly established federal law" or (2) the state court made "an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d); *Harpster v. State of Ohio*, 128 F. 3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal

law erroneously or incorrectly." *Id.* at 411.

III.

A.

Respondent contends that Petitioner's first, third, and fourth claims are procedurally defaulted because they were never fairly presented to the Michigan Supreme Court on his direct appeal.

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman,* 501 U.S. at 752, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent,* 17 F. 3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at the trial court level to preserve his claimed error for appellate review, *e.g.*, to make a contemporaneous objection, or file a motion for a directed verdict. *United States v. Frady,* 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman,* 94 F. 3d 199, 202 (6th Cir. 1996). Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust,* 17 F. 3d at 162; *Murray v. Carrier,* 477 U.S. 478, 496 (1986).

A habeas petitioner procedurally defaults a claim if he fails to raise it in an application for discretionary review with the state's highest court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848

(1999). A claim raised in the state court of appeals but not in the state supreme court cannot be considered in federal habeas review. *See Harris v. Stegall,* 157 F. Supp. 2d 743, 750 (E.D. Mich. 2001).

In the present case, the Michigan Court of Appeals reversed Petitioner's conviction after granting his motion for reconsideration with regard to the *Batson* issue. In its first review of Petitioner's claims, the Michigan Court of Appeals substantively addressed and rejected each of his claims. In the court's second opinion, it only addressed the *Batson* issue and reversed Petitioner's convictions on only that ground. The prosecutor sought, and was granted, leave to appeal on the single issue of whether the trial court's decision to deny Petitioner the right to exercise his peremptory challenges was reversible error. In his answer to the application for leave to appeal, Petitioner's counsel indicated that the "single issue" before the Michigan Supreme Court was whether the trial court violated the dictates of *Batson* in denying Petitioner's peremptory challenges and whether the error was subject to a harmless error analysis or was *per se* reversible. Petitioner did not argue in his answer that the Michigan Court of Appeals erred in rejecting his other claims in its initial decision, nor did he file a cross-appeal.

The general rule in Michigan is that appeals before the Michigan Supreme Court are generally limited to those issues raised in the application for leave to appeal. *See* M.C.R. 7.302(G)(4); *See also People v. Blockton,* 477 Mich. 882; 721 N.W.2d 798 (2006)(Young, J. concurring). In addition, it has been a longstanding rule in Michigan that an appellee is limited to the issues raised by the appellant unless he files a cross-appeal. This has been the rule in both the Michigan Supreme Court, S*ee Therrian v. General Laboratories, Inc.,* 372 Mich. 487, 490; 127 N.W. 2d 319 (1964); *Petition of Detroit Edison Co.,* 365 Mich. 35, 45; 112 N.W.2d 109 (1961), and

in the Michigan Court of Appeals. *See People v. Farquharson,* 274 Mich. App. 268, 279; 731 N.W. 2d 797 (2007); *lv. den.* 478 Mich. 931, 732 N.W.2d 901 ( 2007*);People v. Cervi,* 270 Mich.App. 603, 623, n. 13; 717 N.W.2d 356 (2006). Moreover, a party's failure to brief an issue before the Michigan Supreme Court can be considered a waiver of the issue on appeal. *Lawrence v. Will Darrah & Associates, Inc*., 445 Mich. 1, 4, n. 2; 516 N.W.2d 43 (1994)(citing *Mitchum v. Detroit,* 355 Mich. 182, 203; 94 N.W. 2d 388 (1959)).

In the present case, the only issue raised by the prosecution in its application for leave to appeal was whether the Michigan Court of Appeals erred in reversing Petitioner's conviction on the peremptory challenge claim. Petitioner's counsel did not file a cross-appeal, nor did he brief the other issues in his answer to the application for leave to appeal. Accordingly, Petitioner waived appellate review of his additional claims by the Michigan Supreme Court and therefore failed to properly present these claims to that court for the purposes of exhausting them with the state courts.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 750; *See also Gravley v. Mills,* 87 F. 3d 779, 784-85 (6th Cir. 1996).

Petitioner's counsel, who also represented Petitioner on his appeals with the Michigan courts, appears to argue that he assumed that the other six issues which had originally been raised in the Michigan Court of Appeals on his initial appeal were now ripe for decision after the Michigan Supreme Court reversed the Michigan Court of Appeals' second decision and reinstated his conviction.

A showing of cause by a habeas petitioner requires more than "the mere proffer of an

excuse." *See Lundgren v. Mitchell,* 440 F. 3d 754, 763 (6th Cir. 2006). Therefore, a habeas petitioner cannot rely on conclusory assertions of cause and prejudice to overcome procedural default. Instead, he must present affirmative evidence or argument as to the precise cause and the prejudice produced. *Id.* at 764.

In this case, Petitioner has offered no argument or case law which establishes that he was precluded from filing a cross-appeal in which he asked the Michigan Supreme Court to either consider the other five issues which had been rejected by the Michigan Court of Appeals in their initial opinion as additional grounds for reversal or, in the alternative, ask that the case be remanded to the Michigan Court of Appeals for consideration of these additional claims. Indeed, the Michigan Supreme Court, after vacating a Michigan Court of Appeals' opinion which had reversed a defendant's conviction, has often remanded the matter back to the Michigan Court of Appeals for them to consider issues which they had previously ignored when granting the defendant relief. *See e.g. People v. Lett,* 466 Mich. 206, 208; 644 N.W. 2d 743 (2002)(reversing the Michigan Court of Appeals' decision to reverse the defendant's conviction and remanding the matter to that court for consideration of the additional issue that was raised by defendant, but not decided); *People v. Riley,* 465 Mich. 442, 450; 636 N.W. 2d 514 (2001)(reversing the judgment of the Court of Appeals, and remanding this case to the Court of Appeals for consideration of the other issues raised by the defendant in that court.).

To the extent that Petitioner's counsel erroneously believed that he could not file a cross-appeal with the Michigan Supreme Court with respect to these claims, this would not establish cause to excuse a default. A criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals. *Wainwright v. Torna*, 455 U.S. 586, 587 (1982). "The right to appointed

counsel extends to the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Because there is no constitutional right to the effective assistance of counsel on a discretionary appeal, Petitioner cannot claim that counsel was ineffective for failing to file the a cross-appeal with the Michigan Supreme Court. *Wainwright v. Torna*, 455 U.S. at 587-588; *Harris v. Stegall,* 157 F. Supp. 2d at 750.

With respect to Petitioner's first, third, and fourth claims, he has neither alleged nor established cause to excuse his procedural default. When cause has not been shown, the Court need not consider whether actual prejudice has been demonstrated. *See, e.g., Smith v. Murray*, 477 U.S. 527, 533 (1986*);Long v. McKeen,* 722 F. 2d 286, 289 (6th Cir. 1983).

Further, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup,* 513 U.S. at 324. Petitioner has made no such showing in this case. Petitioner's sufficiency of evidence claim (Claim # I) is insufficient to invoke the actual innocence exception to the procedural default doctrine. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003). Petitioner's first, third, and fourth claims are barred by procedural default and do not warrant habeas relief.

B.

Petitioner next claims that he was deprived of his due process rights when the trial court *sua sponte*, and in response to the prosecutor's objections, refused to permit Petitioner to peremptorily challenge two white, male jurors, without first determining whether the prosecutor had made out a *prima facie* case of discrimination on Petitioner's part and without giving Petitioner's counsel an opportunity to offer race-neutral reasons for attempting to peremptorily excuse these jurors. Petitioner claims that this is a structural error that requires an automatic reversal of his conviction.[5]

The Equal Protection Clause of the Fourteenth Amendment prohibits a prosecutor from challenging potential jurors solely on account of their race. *Batson v. Kentucky,* 476 U.S. 79, 89 (1986). A criminal defendant may establish a *prima facie* case of purposeful discrimination in the selection of a petit jury based solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. *Id.* at 96. To establish such a case, a defendant must show that he is a member of a cognizable racial group and that the prosecutor has used peremptory challenges to remove members of the defendant's race from the jury venire. The defendant must also show that these facts and any other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude jurors from the petit jury on account of their race. These relevant circumstances include the pattern of strikes and the prosecutor's questions and statements. *Batson,* 476 U.S. at 96-97. Once the defendant demonstrates a *prima facie* showing, the burden then shifts to the prosecutor to offer a "race neutral explanation" for challenging the jurors. *Id.* at 97. The trial court must then determine whether the defendant carried his burden of proving purposeful discrimination. *Batson,* 476 U.S. at 98.

---

[5] The victims in this case were Caucasian and Petitioner is African-American.

*Batson* has been extended to prohibit criminal defendants from engaging in purposeful discrimination based on race in the exercise of peremptory challenges. *See Georgia v. McCollum,* 505 U.S. 42, 59 (1992). The prosecution's objection to the defendant's discriminatory use of peremptory challenges is sometimes referred to as a "reverse *Batson* motion" or "reverse *Batson* challenge." *Overton v. Newton*, 295 F.3d 270, 273 (2nd Cir. 2002). The question for this Court is whether Petitioner's reverse-*Batson* claim is cognizable on habeas review.

The United States Supreme Court has repeatedly concluded that peremptory challenges are not of a federal constitutional dimension. *See U.S. v. Martinez-Salazar,* 528 U.S. 304, 311 (2000);*Ross v. Oklahoma*, 487 U.S. 81, 88 (1988); *Gray v. Mississippi,* 481 U.S. 648, 663 (1987); *Stilson v. United States*, 250 U.S. 583, 586 (1919)("There is nothing in the Constitution of the United States which requires the Congress to grant peremptory challenges."); *Georgia v. McCollum,* 505 U.S. at 57 ("This Court repeatedly has stated that the right to a peremptory challenge may be withheld altogether without impairing the constitutional guarantee of an impartial jury and a fair trial"). Moreover, the Supreme Court in *Martinez-Salazar* declined to adopt a remedy of automatic reversal whenever a defendant's right to a certain number of peremptory challenges is substantially impaired. *Id.,* 528 U.S. at 317, n. 4.

In rejecting a similar habeas claim, the Second Circuit has noted that "[t]here is no Supreme Court precedent clearly establishing that the success of a prosecutor's *Batson* challenge works any constitutional harm" in the absence of any showing that the seated juror was biased. *Frazier v. New York*, 156 Fed.Appx. 423, 425 (2nd Cir. 2005); *See also Vega v. Portuondo,* 120 Fed. Appx. 380, 383 (2nd Cir. 2005)(federal habeas court could not hold that state trial court's refusal of defense peremptory challenge to a juror denied petitioner a constitutional right, given that United States

Supreme Court had declined to recognize a constitutional right to exercise peremptory challenge). Other habeas courts have reached the same conclusion. *See Long v. Norris,* No. 2007 WL 2021839, * 13 (E.D. Ark. July 10, 2007)("the mere fact that the trial court disallowed petitioner two of his peremptory challenges to white males does not violate the Constitution"); *Reyes v. Greiner,* 340 F. Supp. 2d 245, 275 (E.D.N.Y. 2004)("reverse-*Batson*" errors "do not even implicate the Equal Protection Clause"); *Haywood v. Portuando,* 288 F. Supp. 2d 446, 461-62 (S.D.N.Y. 2003)(trial court's alleged error in denying defendant use of peremptory challenge during voir dire was not an egregious departure from accepted standards of legal justice, and thus, it did not deprive defendant of due process). The rationale behind these cases is that "[B]atson is founded on the concept that discrimination in jury selection is an independent wrong that must have redress."*Haywood,* 288 F. Supp. 2d at 461. However, "where a party is disallowed a peremptory challenge, by contrast, none of the harms implicated by *Batson* are at issue because no discrimination has occurred. This is true even if the disallowance was based on an incorrect assessment of counsel's motive for exercising the peremptory challenge. The only harm is that the litigant has been mistakenly deprived of a peremptory challenge." *Id.* at pp. 461-62.

The Court is aware that the Sixth Circuit, in a direct appeal from a federal criminal conviction, held that an erroneous reverse-*Batson* ruling by a federal district court was a structural error which required reversal of the defendant's conviction. *See United States v. McFerron.* 163 F. 3d 952, 956 (6th Cir. 1998). The Sixth Circuit's ruling in that case, however, is not determinative of whether this Court should grant habeas relief from a state court conviction.

A federal habeas court may not overrule a state court, however, for holding a view different from its own, under the "contrary to" clause of the Antiterrorism or Effective Death Penalty Act

(AEDPA), when the precedent from the United States Supreme Court is, at best, ambiguous. *See Mitchell v. Esparza,* 540 U.S. 12, 17 (2003). A habeas court may therefore only look at the decisions of the United States Supreme Court as they existed at the time of the relevant state court decision to determine whether the state court decision was contrary to, or an unreasonable application of, clearly established federal law. *Mitzel v. Tate,* 267 F. 3d 524, 530-531 (6th Cir. 2001). A habeas court should not look to the decisions of this circuit, or other courts of appeals, when deciding whether a state court's decision was contrary to, or an unreasonable application of, clearly established federal law. *Id.*

In light of the fact that the United States Supreme Court has never held that a defendant has a federal constitutional right to peremptory challenges, the fact that the Sixth Circuit has held that a reverse-*Batson* claim is a structural error in federal criminal cases does not entitle Petitioner to habeas relief. This would particularly be so in light of the fact, as the Michigan Supreme Court pointed out in Petitioner's appeal before that court, that since the Sixth Circuit case in *McFerron* predated the United States Supreme Court's decision in *Martinez-Salazar,* the Sixth Circuit's opinion was "of questionable weight." *People v. Bell,* 473 Mich. at 295, n. 18.

Petitioner also cites to the case of *Ali-Khaum v. Davis,* 339 F. 3d 521 (7th Cir. 2003), in which the Seventh Circuit affirmed the grant of habeas corpus where the state trial court invoked the *Batson* process to preclude a Petitioner from exercising his peremptory challenges in the absence of *prima facie* discrimination on his part. In addition to the fact that this Court cannot look to the law of circuit courts to determine whether a state court's decision was contrary to clearly established law, the Seventh Circuit took pains in *Ali-Khaum* to emphasize that its holding was "strictly limited to the issues raised on appeal by the parties" and indicated that it was not deciding that the

Constitution provides a *per se* right to peremptory challenges, that the Constitution *per se* requires states to adhere to their own rules of trial procedure, or that the harmless-error doctrine is inapplicable to these type of cases. The Seventh Circuit further noted that the trial court in that case had basically converted all of the defendant's peremptory challenges to challenges for cause, something which did not happen in Petitioner's case. *Id.,* at p. 529, n. 6. Secondly, the Petitioner in *Ali-Khaum* was sentenced to death. Because "death is different" and "doubts ... should be resolved in favor of the accused," *DePew v. Anderson*, 311 F. 3d 742, 751 (6th Cir.2003)(*quoting Andres v. United States*, 333 U.S. 740, 752 (1948)), courts often impose stricter scrutiny of errors in capital cases than in noncapital ones. Because Petitioner's case does not involve a sentence of death, the Seventh Circuit's holding in *Ali-Khaum* is distinguishable on this ground. Accordingly, the Court will deny Petitioner's claim.

The Court will also deny a certificate of appealability to Petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition states a valid claim of the denial of a constitutional right or whether the Court's procedural ruling is correct. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it

debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.*

A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States,* 310 F. 3d 900, 901 (6th Cir. 2002). For the reasons stated in this opinion, the Court will deny Petitioner a certificate of appealability because he has not demonstrated a substantial showing of the denial of a federal constitutional right.

IV.

Petitioner's first, third, and fourth claims are procedurally defaulted. Moreover, the decision of the Michigan Supreme Court regarding Petitioner's second claim was not contrary to, or an unreasonable application of clearly established federal law as to determined by the United States Supreme Court.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [Dkt. # 1] is **DENIED.**

It is further **ORDERED** that Petitioner's motion to file reply brief instanter is [Dkt. # 9] **GRANTED**.

It is further **ORDERED** that the Court **DECLINES** to issue a certificate of appealability because reasonable jurists would not debate whether the petition states a valid claim of the denial

of a constitutional right or whether the procedural Court's procedural ruling is correct. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: January 14, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 14, 2008.

s/Tracy A. Jacobs
TRACY A. JACOBS

---