UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARLON BELL,

      Petitioner,

                                    Case Number 06-15688-BC
v.                                      Honorable Thomas L. Ludington

ANDREW JACKSON,

      Respondent.

_____/

**OPINION AND ORDER GRANTING IN PART PETITIONER'S MOTION
FOR RECONSIDERATION AND DENYING ON RECONSIDERATION
THE PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Marlon Bell, presently confined at the Mound Correctional Facility in Detroit, Michigan, filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 through counsel Douglas W. Baker on December 21, 2006. Petitioner was convicted by a jury in the Wayne County Circuit Court of two counts of first-degree felony murder, Mich. Comp. Laws § 750.316; two counts of armed robbery, Mich. Comp. Laws § 750.529; and one count of conspiracy to commit armed robbery, Mich. Comp. Laws §§ 750.157a; 750.529.

Petitioner's application advances the following errors: (1) the evidence was insufficient to convict him of the charges; (2) the trial court violated Petitioner's right to due process when he arbitrarily refused to allow trial counsel to use peremptory strikes to excuse two white, male jurors, without first conducting an inquiry pursuant to *Batson v. Kentucky,* 476 U.S. 79 (1986); (3) the trial court's instruction addressing the offense of being an accessory after the fact was misleading; and (4) the trial court judge refused to permit Petitioner to call defense witnesses on his behalf. Respondent Andrew Jackson filed an answer to the petition, asserting that Petitioner's first, third, and fourth claims were procedurally defaulted. Respondent also contends that Petitioner's *Batson*

claim lacks merit.

On January 14, 2008, the Court denied Petitioner's habeas corpus application, finding (1) that Petitioner's first, third, and fourth claims were procedurally defaulted and (2) Petitioner's *Batson* claim was without merit. *See Bell v. Jackson,* No. 2008 WL 126576 (E.D. Mich. January 14, 2008).

Petitioner has now filed a motion for reconsideration, in which he argues that this Court erred in finding his first, third, and fourth claims to be procedurally defaulted. Petitioner has also requested this Court to reconsider its decision to deny Petitioner a certificate of appealability with respect to his second claim. For the reasons that follow, the motion for reconsideration will be granted in part and the Court will review the merits of Petitioner's first, third, and fourth claims. However, for the reasons stated below, the Court will again deny the petition for writ of habeas corpus. The Court will also once again deny Petitioner a certificate of appealability as to all four claims.

This Court's local rules permit a party to request the Court to reconsider its disposition in an earlier order or opinion. E.D. Mich. LR 7.1 (h). A motion for reconsideration which presents the same issues already ruled upon by the court, either expressly or by reasonable implication, will not be granted. *Hence v. Smith*, 49 F. Supp. 2d 547, 550 (E.D. Mich. 1999). The movant shall not only demonstrate a palpable defect by which the court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof. A palpable defect is a defect that is obvious, clear, unmistakable, manifest, or plain. *See Witzke v. Hiller*, 972 F. Supp. 426, 427 (E.D. Mich. 1997).

Petitioner primarily requests this Court to reconsider its previous ruling that Petitioner's first,

third, and fourth claims were procedurally defaulted and proceed to a merits review of those claims. The Court originally found that these three claims were procedurally defaulted, because Petitioner did not present these claims to the Michigan Supreme Court when the prosecutor appealed the Michigan Court of Appeals' decision to reverse Petitioner's convictions. This Court found that Petitioner did not present these claims to the Michigan Supreme Court, because he did not file a cross-appeal that raised these claims nor did he mention these claims in his answer to the prosecutor's application for leave to appeal to the Michigan Supreme Court.

Petitioner's counsel contends that his claims are not procedurally defaulted, because these claims could not be brought before the Michigan Supreme Court, in light of the fact that the Michigan Court of Appeals vacated its initial decision to affirm his conviction on the seven grounds raised on Petitioner's appeal of right, including these three claims, when it granted Petitioner reconsideration of his peremptory challenges claim and reversed his conviction solely on that ground. The Michigan Court of Appeals declined to address Petitioner's remaining claims on reconsideration. Petitioner's counsel emphasizes that because the Michigan Court of Appeals vacated its original decision, the sole issue that could be brought before the Michigan Supreme Court on the prosecutor's appeal was the issue of whether the Michigan Court of Appeals erred in reversing Petitioner's conviction on the peremptory challenges claim. Petitioner notes that under Michigan law, a "vacated opinion has no effect." *See Graves v. American Acceptance Mortg. Corp.,* 469 Mich. 608, 618, n. 8; 677 N.W.2d 829 (2004)(Weaver, J., concurring). Petitioner's counsel therefore believed that he could not cross-appeal the remaining claims which had been ruled upon by the Michigan Court of Appeals in its vacated opinion. When the Michigan Supreme Court chose to reverse the Michigan Court of Appeals decision and reinstate the conviction, Petitioner's counsel

believed that the case would be remanded to the Michigan Court of Appeals for it to consider the remaining issues. When the Michigan Supreme Court did not do so, Petitioner attempted to get the issues addressed both in the Michigan Court of Appeals and the Michigan Supreme Court, but with no success.

A procedural default is not a jurisdictional bar to review of a habeas petition the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). In addition, "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, in light of the unusual procedural posture of this case arising from the decisions of the Michigan Court of Appeals, as well as the lack of specific guidance in Michigan's rules of appellate procedure governing the circumstance, the Court finds that the interests of judicial economy are best served by addressing the merits of Petitioner's first, third, and fourth claims.

Petitioner has also requested the Court to reconsider its decision to deny him a certificate of appealability on his second claim. In its earlier opinion, the Court relied on United States Supreme Court authority for the notion that peremptory challenges are not of a federal constitutional dimension. Dkt. # 11 at 12 (*citing* U.S. v. Martinez-Salazar, 528 U.S. 304, 311 (2000)*;Ross v. Oklahoma*, 487 U.S. 81, 88 (1988); *Gray v. Mississippi,* 481 U.S. 648, 663 (1987); *Stilson v. United States*, 250 U.S. 583, 586 (1919)). Petitioner's motion for reconsideration contends that the Court's analysis of the reverse-*Batson* issue is debatable among reasonable jurists. Specifically, Defendant

notes, as the Court acknowledged, that the Sixth Circuit, as have several other circuits, has recognized that an erroneous reverse-*Batson* ruling in a federal court is structural error requiring the reversal of a federal criminal conviction. Dkt. # 11 at 13 (*citing United States v. McFerron*, 163 F.3d 952, 956 (6th Cir. 1998). In light of the fact that Petitioner's request for relief is grounded on an alleged constitutional violation and governed by the precedent of the United States Supreme Court and not a direct appeal from a federal conviction, the Court does not agree, based on existing precedent, that reasonable jurists would find the conclusions debatable.

I

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court. Petitioner's counsel has provided a detailed statement of facts in his petition for writ of habeas corpus, which the respondent has not contested in its answer. The Court will therefore accept the factual allegations contained within the habeas petition insofar as they are consistent with the record, because the respondent has not disputed them. *See Dickens v. Jones,* 203 F. Supp. 2d 354, 360 (E.D. Mich. 2002). Thus, the Court will simply recite verbatim the relevant facts regarding Petitioner's conviction from the Michigan Court of Appeals' initial opinion affirming his conviction, which are presumed correct on habeas review. *See e.g. Marsack v. Howes,* 300 F. Supp. 2d 483, 486-87 (E.D. Mich. 2004):

> Reginald and Isiah Murray operated an escort service that employed the victims in this case, Roberts and Hodges. Defendant and two of his codefendants, Troy King and Matthew Bell (defendant's cousin), provided security for the female employees of the escort service. On July 28, 1999, Roberts, accompanied by King, collected approximately $4,000 from the Murray brothers. Thereafter, Achleng Dobbs (King's cousin) drove King and Roberts to Ann Arbor, where Dobbs rented a car for Roberts. Roberts paid for the car with cash.
>
> Defendant lived with Darrell Deed and Richard Bell (defendant's cousin) in a house at 8066 Marlowe Street in Detroit. At about 11:00 a.m. on July 29, 2000 (sic),

Matthew Bell and King stopped by the house. King called Dobbs and told him that he needed the rental car so that he could "hit a lick." Deed testified that he heard King and understood this phrase to mean "to rob someone." King told Dobbs that he needed the car quickly so that he could "pick the girls up." He also mentioned that "the girls had the money." Defendant and Matthew Bell were sitting at the dining room table, about twenty feet away from King, during this conversation. While King was waiting for Dobbs to arrive, he, defendant, and Matthew Bell sat at the table talking. When Dobbs arrived in the car, King left with Dobbs and picked up Roberts. Outside of Roberts' presence, King told Dobbs, "I'll rob her. I did it before."

At approximately 6:00 p.m., King came back to the house on Marlowe, accompanied by Roberts and Hodges. The Murray brothers had paid Hodges $ 1,200 that day. King, Roberts, and Hodges joined defendant, Deed, Matthew Bell, and Richard Bell on the porch. Matthew Bell then escorted Hodges into the house, where music was playing at a high volume, and into the basement, where he shot and killed Hodges. Shortly after that, the people on the porch moved inside the house. Defendant, King and Roberts sat at the dining room table. Matthew Bell came back upstairs. Roberts was shot by Matthew Bell while seated at the dining room table. Deed testified that he did not hear anyone scream or see anyone express shock or surprise at what happened. Richard Bell and Deed left the house immediately after the shootings. Defendant helped Matthew Bell take Roberts' body to the basement.

Matthew Bell and King later left the house, leaving the victims' bodies on the basement floor next to the defendant's bedroom. When Deed returned to the house, defendant asked Deed if he would help move the bodies. When Deed declined, defendant left the house and returned with Donald Brown (defendant's father), who brought his pickup truck. Defendant and Brown wrapped the bodies in sheets, tied them up with electrical cords, placed them in Brown's truck, and drove to a nearby park, where they dumped the bodies. On the following morning, defendant and Deed cleaned up the blood in the basement. Defendant told Deed that the two victims were killed for their money, which totaled about $ 4,000 or $ 5,000.

*People v. Bell,* No. 233234, Mich. App. LEXIS 2458, * 3-*6 (Mich. Ct. App. October 2, 2003).

Petitioner's conviction was initially affirmed on appeal. *Id.* Petitioner filed a motion for reconsideration as to his claim involving the trial court's refusal to allow him to peremptorily challenge two white, male jurors. On reconsideration, the Michigan Court of Appeals agreed that the trial court's refusal to follow the three-step analysis under *Batson* before denying Petitioner his peremptory challenges was a structural error which required reversal of Petitioner's convictions.

*People v. Bell,* 675 N.W.2d 894 (Mich. Ct. App. 2003). The Michigan Supreme Court granted leave

to appeal and ultimately reversed the Michigan Court of Appeals' decision. *See People v. Bell,* 702

N.W.2d 128 (Mich. 2005); *Opinion Corrected on Rehearing*, 704 N.W. 2d 69 (Mich. 2005).

Petitioner subsequently filed a petition for writ of habeas corpus on the following grounds:

I. [Petitioner's] convictions of murder, robbery, and conspiracy violate due process because the evidence was insufficient to convict him of any crime except accessory after the fact.

II. Judge Townsend deprived [Petitioner] of his rights to due process of law when, without any of the inquiry mandated by *Batson v. Kentucky*, or its progeny, he arbitrarily refused to allow defense counsel to use peremptory strikes to excuse two white, male jurors.

III. Judge Townsend denied [Petitioner] his right to due process by giving instructions that made it seem that the offense of accessory after the fact was just a way of aiding and abetting the underlying robberies and murders.

IV. Judge Townsend denied [Petitioner] his Sixth Amendment rights to present witnesses in his own behalf and present a defense by refusing to allow the defense to call witness Jocarroll George to testify that she saw [Petitioner] at a funeral at about the time the prosecution alleged he was in a room with Troy King plotting the robbery/murders.

As mentioned above, this Court originally denied Petitioner habeas relief on January 14,

2008, finding Petitioner's second claim to be non-cognizable and further ruling that Petitioner's first,

third, and fourth claims were procedurally defaulted. This Court will now evaluate the merits of

Petitioner's first, third, and fourth claims, in light of its decision to reconsider its earlier ruling to

procedurally default these claims.

II

28 U.S.C. § 2254(d) governs the standard of review employed when evaluating a habeas

petition and provides the following analytical framework:

An application for a writ of habeas corpus on behalf of a person in custody pursuant

to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*See Harpster v. State of Ohio*, 128 F.3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Michigan Court of Appeals' initial decision that adjudicated Petitioner's first, third, and fourth claims was vacated when the Michigan Court of Appeals reconsidered its initial decision and agreed that the trial court's refusal to follow the three-step analysis under *Batson,* before denying Petitioner his peremptory challenges, was a structural error which required reversal of Petitioner's convictions. However, the reasoning of a vacated opinion may be viewed as persuasive authority if its reasoning is unaffected by the decision to vacate. *See United States v. Barona,* 56 F.3d 1087,

1093, n. 1 (9th Cir. 1995). In light of the fact that the Michigan Court of Appeals' reasoning with regards to Petitioner's first, third, and fourth claims was not affected by its subsequent decision to vacate their initial opinion, this Court will look to the Michigan Court of Appeals' reasoning in its initial opinion to determine whether the first, third, and fourth claims have merit.

Moreover, in the absence of any opinion from the Michigan Court of Appeals on these three claims, this Court would be required to engage in what could be described as a deferential, *de novo* review of these claims. When a state court has not articulated its reasoning when denying a constitutional claim, a federal habeas court is obligated to conduct an independent review of the record and applicable law and determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented; however, that independent review is not a full *de novo* review of the claims, but remains deferential because a habeas court cannot grant relief unless the state court decision is not in keeping with the Antiterrorism and Effective Death Penalty Act's (AEDPA) strictures. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). Thus, where a state court decides a constitutional issue by form order or without an extended discussion a habeas court should focus on the result of the state court's decision, applying the aforementioned standard. *Id.* at 943, n. 1.

### III

### A

Petitioner first contends that there was insufficient evidence to establish that he conspired with, or aided and abetted Troy King and Matthew Bell in the robbery and murders of the victims in this case.

In rejecting this claim in its initial decision, the Michigan Court of Appeals concluded that there was sufficient evidence for a rational trier of fact to conclude that Petitioner conspired with and aided and abetted the other codefendants with the murders. The Michigan Court of Appeals noted that Troy King made his "hit a lick" statement during a telephone conversation which took place in Petitioner's presence on July 29, 1999, just before the murders. King indicated on the phone that he needed a rental car to rob someone and he needed the car quickly because he needed to "pick the girls up" and further noted that "the girls had money." The Michigan Court of Appeals concluded that King's statements, made in the presence of Petitioner and Matthew Bell, was circumstantial evidence that King, Petitioner, and Matthew Bell "jointly planned to rob someone." *People v. Bell,* No. 233234, Mich. App. LEXIS 2458,* 13 (Mich. Ct. App. Oct. 2, 2003). The Michigan Court of Appeals also noted that Roberts was seated at the same table as Petitioner was when she was shot in the head by Matthew Bell. The Michigan Court of Appeals noted that the evidence established that Petitioner expressed no shock or surprise that the victim was murdered in his presence, therefore supporting an inference that the murders "were not an unintended or unanticipated result from defendant's perspective." *Id.* at * 14. The Michigan Court of Appeals further noted that Petitioner remained at the house after his roommates had left to assist in the cover-up of the murders. Petitioner further arranged with Donald Brown to dispose of the victims' bodies. On the day after the shooting, Petitioner further assisted in the murders by cleaning up the crime scene. Finally, the evidence that Petitioner told Deed that the victims were killed for their money supported an inference that Petitioner "had information concerning the purpose of the crime and the intended results." *Id.*

It is beyond question that "the Due Process Clause protects the accused against conviction

except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted) (emphasis in the original). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324, n. 16. "[N]ormally, pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether the state court's application of the *Jackson* standard was contrary to or an unreasonable application of Supreme Court precedent." *Wolfe v. Bock,* 412 F. Supp. 2d 657, 681 (E.D. Mich. 2006).

On habeas review, a federal court does not weigh the evidence or determine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). The Court does not apply the reasonable doubt standard when determining the sufficiency of evidence on habeas review. *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995).

Under Michigan law, the elements of first-degree felony murder are:

(1) the killing of a human being;
(2) with an intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result (i.e., malice);
(3) while committing, attempting to commit, or assisting in the commission of one of the felonies enumerated in the felony murder statute.

*Matthews,* 319 F.3d at 789 *(citing People v. Carines*, 597 N.W.2d 130, 136 (Mich. 1999)).

To support a finding under Michigan law that a defendant aided and abetted in the commission of a crime, the prosecutor must show that:

1. the crime charged was committed by the defendant or some other person;
2. the defendant performed acts or gave encouragement that assisted the commission of the crime; and
3. the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.

*Long v. Stovall,* 450 F. Supp. 2d 746, 753 (E.D. Mich. 2006) (*citing Carines*, 597 N.W.2d at 135).

Under Michigan law, to convict a defendant of felony murder under an aiding and abetting theory, the prosecutor must show that someone killed the victim during the underlying predicate felony, that the defendant assisted that person in killing the victim, and that the defendant either intended to commit the crime or he knew when he gave the assistance that the other person intended to commit the crime. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 858 (E.D. Mich. 2003) (*citing People v. Smielewski*, 596 N.W.2d 636 (Mich. Ct. App. 1999)).

In order to be guilty of aiding and abetting under Michigan law, the accused must take some conscious action designed to make the criminal venture succeed. *Fuller v. Anderson,* 662 F.2d 420, 424 (6th Cir. 1981). Aiding and abetting describes all forms of assistance rendered to the perpetrator of the crime and comprehends all words or deeds which might support, encourage, or incite the

commission of the crime. *People v. Turner*, 540 N.W.2d 728, 733-34 (Mich. Ct. App. 1995). The

quantum or amount of aid, advice, encouragement, or counsel rendered, or the time of rendering,

is not material if it had the effect of inducing the commission of the crime. *People v. Lawton*, 492

N.W.2d 810, 816 (Mich. Ct. App. 1992).

      To be convicted of aiding and abetting, the defendant must either possess the required intent

to commit the crime or have participated while knowing that the principal had the requisite intent;

such intent may be inferred from circumstantial evidence. *Long,* 450 F. Supp. 2d at 753; *People v.*

*Wilson*, 493 N.W.2d 471, 476-77 (Mich. Ct. App. 1992). The intent of an aider and abettor is

satisfied by proof that he knew the principal's intent when he gave aid or assistance to the principal.

*People v. McCray*, 533 N.W.2d 359, 361 (Mich. Ct. App. 1995). An aider and abettor's state of

mind may be inferred from all of the facts and circumstances, including close association between

the defendant and the principal, the defendant's participation in the planning and execution of the

crime, and evidence of flight after the crime. *Turner,* 540 N.W.2d at 733-34.

      Under Michigan law, a conspiracy is defined as "a mutual agreement or understanding,

express or implied, between two or more persons to a commit a criminal act." *Cameron v. Birkett,*

348 F. Supp. 2d 825, 839 (E.D. Mich. 2004) (*quoting People v. Carter*, 330 N.W.2d 314, 318-19

(Mich. 1982)). "[A] two-fold specific intent is required for conviction: intent to combine with

others, and intent to accomplish the illegal objective." *Carter*, 330 N.W.2d at 319. Direct proof of

an agreement is not required, nor is proof of a formal agreement necessary. Rather, it is sufficient

that the circumstances, acts, and conduct of the parties establish an agreement. *People v. Cotton*,

478 N.W.2d 681, 688-89 (Mich. Ct. App. 1991). A conspiracy may be proven by circumstantial

evidence or may be based on inference. *Id.*

The elements of armed robbery under Michigan law are: (1) an assault, and (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute. *See Lovely v. Jackson,* 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004) (*citing People v. Allen*, 505 N.W.2d 869 (Mich. Ct. App. 1993)).

Petitioner contends that there was insufficient evidence presented at trial to allow a rational trier of fact to conclude that Petitioner had aided and abetted in the felony murders or that he conspired with the other codefendants to rob and kill the victims. Petitioner contends that the evidence, at best, establishes that he was merely present at the time of the discussions of the robberies and at the time of the murders and that at worst, he was guilty only of being an accessory after the fact.

Petitioner is correct that a defendant's mere presence, even with knowledge that a crime is being committed, is insufficient to establish that a defendant aided and abetted in the commission of the offense. *People v. Norris*, 600 N.W.2d 658 (Mich. Ct. App. 1999); *Fuller*, 662 F.2d at 424. However, a claim of mere presence is not a "catch-all excuse" to defeat an inference of guilt beyond a reasonable doubt. In evaluating a "mere presence" defense, a factfinder must distinguish, based upon the totality of the circumstances, between one who is merely present at the scene and one who is present with criminal culpability. *See Long*, 450 F. Supp. 2d at 754 (*citing Duran v. Pepe*, 899 F.Supp. 839, 843 (D. Mass. 1995)). An aider and abettor who is intentionally present during the commission of a crime may be silent during the crime's commission, "but by his demeanor, or through behavior and acts not directly related to the crime, provide 'moral support' that is recognizable to, and relied upon by, the principal. Such acts may be silent and may not be overt but may still amount to more than 'mere' presence." *Sanford v. Yukins,* 288 F.3d 855, 862 (6th Cir.

2002). Michigan's "broad definition" of aiding and abetting "easily encompasses situations where the alleged aider and abettor, although silent and not committing acts directly related to the crime, was not 'merely' present, but providing emotional encouragement and support." *Id.*

In a similar vein, although mere presence at a crime scene is insufficient to show participation in a conspiracy, a defendant's participation in a conspiracy's common purpose and plan may be inferred from the defendant's actions and reactions to the circumstances. *See United States v. Hernandez,* 31 F.3d 354, 358 (6th Cir. 1994).

There was sufficient evidence in this case to establish that Petitioner aided and abetted his codefendants with the felony murder charges and conspired with them to commit an armed robbery. The evidence established that Troy King discussed committing the armed robberies in Petitioner's presence. Evidence that King discussed the plans for the armed robbery in Petitioner's presence would support an inference that Petitioner participated in the conspiracy to commit an armed robbery, as well as the subsequent murders. *See e.g. U.S. v. Lanza,* 790 F.2d 1015, 1019 (2nd Cir. 1986). Moreover, the fact that both the initial conversation about the robbery and the subsequent robberies and murders took place at the house where Petitioner lived further supports his active involvement in the murders and the robberies. *See United States v. Smith,* 203 F.3d 884, 888 (5th Cir. 2000). Perhaps the strongest evidence of Petitioner's active involvement in the robberies and murders was that Petitioner expressed no surprise or horror when Roberts was killed at the very table where he was sitting. Numerous cases have held that a defendant's lack of surprise or shock at the victim's murder is a factor that would support an inference that the defendant was an active participant in the murder. *See State v. Mathews,* 809 So.2d 1002, 1010 (La. Ct. App. 2001); *State v. Dominguez-Ramirez,* 563 N.W.2d 245, 257 (Minn. 1997); *People v. Bustos,* 29 Cal. Rptr. 2d 112

(Cal. Ct. App. 1994).

In addition, one of Petitioner's codefendants was his cousin. This also supports the conclusion that Petitioner aided and abetted in the robberies and murders. *See e.g. United States v. Quadar,* 223 Fed.Appx. 22, 24 (2nd Cir. 2007). Moreover, there is no evidence that Petitioner attempted to assist the victims or call the police after the shooting. This evidence further supports a finding that Petitioner actively aided and abetted the murders. *See State v. Meyers,* 683 So.2d 1378, 1384 (La. Ct. App. 1996). Ultimately, Petitioner's act of disposing of the victims' bodies, when coupled with the other evidence, was sufficient to establish his active role in these crimes. *See Firmingham v. Yukins,* 27 Fed.Appx. 530, 537 (6th Cir. 2001).

Finally, common sense would indicate that the other participants in this agreement to rob and kill these two women would not have permitted a "noncontributing interloper" to remain with them inside of this house "while their conspicuous criminal conduct continued unabated." *United States v. Batista-Polanco,* 927 F.2d 14, 18 (1st Cir. 1991); *See also United States v. Staten*, 581 F.2d 878, 885 (D.C. Cir. 1978) (presence in small apartment replete with indicia of ongoing drug-distribution enterprise in open view "could rationally have been viewed as a privilege reserved exclusively for participants"). A "factfinder may fairly infer....that it runs counter to human experience to suppose that criminal conspirators would welcome innocent nonparticipants as witnesses to their crimes." *Batista-Polanco,* 927 F.2d at 18.

In light of the evidence presented in this case, the Michigan Court of Appeals' rejection of Petitioner's mere presence claim was not an unreasonable application of clearly established federal law, so as to entitle him to habeas relief. *See Long,* 450 F. Supp. 2d at 754.

In addition, the evidence at trial, when viewed in a light most favorable to the prosecution,

was sufficient to establish that Petitioner was guilty of aiding and abetting in the robberies and the murders, and was not merely guilty of being an accessory after the fact, as Petitioner suggests. Under Michigan law, an "accessory after the fact" is a person who, with knowledge of the other person's guilt, renders assistance to that person in an effort to hinder his detection, arrest, trial, or punishment. *Cathron v. Jones,* 190 F. Supp. 2d 990, 1000 (E.D. Mich. 2002) (*citing People v. Lucas*, 262 N.W.2d 662 (Mich. 1978)). "Accessories after the fact, by definition, do not participate in the charged offense either as a principal or as an aider or abettor, and they do nothing in furtherance of the offense before or while it occurred." *Id.* (*citing People v. Perry*, 554 N.W.2d 362 (Mich. Ct. App. 1996)). An accessory after the fact thus "has no causal role in the principal offense." *Id.*

In the present case, as mentioned above, there was sufficient evidence to establish that Petitioner participated as an aider and abettor in the robberies and murders before and while they occured. The evidence at trial was therefore sufficient to allow a rational trier of fact to conclude that Petitioner was guilty of aiding and abetting in the robberies and murders and not merely an accessory after the fact. Petitioner is not entitled to habeas relief on his first claim.

B

Petitioner next contends that the trial court gave a faulty and incomplete instruction on the offense of being an accessory after the fact and further failed to give the standard jury instruction, CJI 2d 8.7, which distinguishes between an aider and abettor to the principal offense or offenses and being an accessory after the fact.

Petitioner's counsel requested an instruction on accessory after the fact to inform the jury that if they found that Petitioner's conduct was solely limited to the cleanup efforts after the murders, then that would be insufficient to support a finding that Petitioner was guilty of aiding and

abetting in the robberies and murders.

The trial court gave the following instruction:

"Now, there is an offense known as Accessory After the Fact. And that simply means that a person has done an action, after the crime has been committed, to protect, or to–to help the perpetrator escape detection.

In other words, Accessory After the Fact, accessory after the fact has nothing to do with the offense itself. He comes in after an offense has been committed, and does something to cover up, or to aid and abet the perpetrator to escape prosecution or to escape detection from committing the offense.

Now, the law states that:
Any party who shall directly commit an offense, or who shall procure, counsel, aid, and abet another person in the commission of an offense, is as guilty as the party who commits the offense.

That is known as aiding and abetting."

After the instructions were read, Petitioner's counsel saw the verdict form for the first time and noted that the verdict did not contain an option for finding Petitioner guilty of accessory after the fact. When it was brought to the trial court judge's attention, the judge explained that he had merely explained the accessory after the fact concept to the jurors so that they would find Petitioner not guilty if they thought that he was merely an accessory after the fact. Counsel appeared to be satisfied with the trial court judge's explanation and did not object to the verdict form.

In rejecting Petitioner's claim, the Michigan Court of Appeals noted that any incomplete instruction on accessory after the fact did not affect Petitioner's rights, because Petitioner was not charged with this offense. The Michigan Court of Appeals further found that the instructions given by the trial court on aiding and abetting accurately set forth the law on aiding and abetting. *People v. Bell,* No. 233234, Mich. App. LEXIS 2458, * 17 (Mich. Ct. App. Oct. 2, 2003). The Michigan Court of Appeals further found that under Michigan law, Petitioner was not entitled to an accessory

-18-

after the fact instruction as a lesser offense, because under Michigan law, accessory after the fact is not a cognate offense of murder. *Id.* At *17, n. 22 (*citing People v. Perry*, 594 N.W.2d 477 (Mich. 1999)).

An erroneous jury instruction warrants habeas corpus relief only where the instruction " 'so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (*quoting Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional] right." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The jury instruction " 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (*quoting Cupp*, 414 U.S. at 147). The court must "inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Id.* (*quoting Boyde v. California*, 494 U.S. 370, 380 (1990)). A habeas petitioner's burden of showing prejudice is especially heavy when a petitioner claims that a jury instruction was incomplete, because an omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law. *See Hardaway v. Withrow,* 305 F.3d 558, 565 (6th Cir. 2002).

In the present case, Petitioner does not contend that the trial court failed to give an accurate instruction on the elements of aiding and abetting and the Michigan Court of Appeals, found, in fact, the judge's instructions accurately set forth the elements of aiding and abetting. Because the Michigan Court of Appeals found that the aiding and abetting instruction given by the trial court accurately reflected Michigan law, this Court must defer to that determination and cannot question it. *Seymour v. Walker*, 224 F.3d 542, 558 (6th Cir. 2000).

In the present case, the trial court's jury instruction adequately explained the difference between being an accessory after the fact and being an aider and abettor. The trial court explained that being an accessory after the fact meant that the person engaged in an action after the crime was committed to protect, or to help the perpetrator escape detection. The trial court further explained that the being an accessory after the fact had nothing to do with the offense itself. The trial court further explained that an accessory after the fact "comes in after an offense has been committed, and does something to cover up, or aid and abet the perpetrator to escape prosecution or to escape detection from committing the offense." Elsewhere, the trial court correctly instructed the jurors on the elements for aiding and abetting. Under the circumstances, the trial court's instruction to the jurors concerning the distinction between being an aider and abettor and being an accessory after the fact was sufficiently clear for the jurors in this case to come to an intelligent decision. *See U.S. v. Anthony,* 145 F.Supp. 323, 338 (M.D. Pa. 1956).

Moreover, in light of the evidence in this case which established that Petitioner was actively involved in aiding and abetting in the murders and in the conspiracy to commit an armed robbery, any failure to clarify the distinction between being an aider and abettor and being an accessory after the fact did not amount to a fundamental miscarriage of justice so as to entitle Petitioner to habeas relief. *See Rodgers v. Stine*, 73 F. Supp. 2d 778, 784-85 (E.D. Mich. 1999).

Moreover, to the extent that Petitioner is contending that the trial court should have instructed the jurors on accessory after the fact as a lesser included offense, he would not be entitled to habeas relief on this claim. The United States Supreme Court has declined to determine whether the Due Process Clause requires that a state trial court instruct a jury on a lesser included offense in a non-capital case. *See Adams v. Smith,* 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003)(*citing to*

*Beck v. Alabama,* 447 U.S. 625, 638, n. 4 (1980)).  Thus, a state trial court's failure to give the jury

an instruction on a lesser included offense in a non-capital case is not contrary to, or an unreasonable

application of, clearly established federal law as required for federal habeas relief.  *Id.  Beck* has

been interpreted by the Sixth Circuit to mean that "the [federal] Constitution does not require a

lesser-included offense instruction in non-capital cases." *Campbell v. Coyle,* 260 F.3d 531, 541 (6th

Cir. 2001).  Thus, the failure of a state trial court to instruct a jury on a lesser included offense in a

non-capital case is not an error cognizable in federal habeas review.  *Bagby v. Sowders*, 894 F.2d

792, 797 (6th Cir. 1990).

        In this case, Petitioner is not entitled to habeas relief on his claim.  The Michigan Court of

Appeals determined that Petitioner was not entitled to an instruction for the offense of accessory

after the fact under Michigan law.  Where a state court has reviewed a habeas petitioner's request

for a lesser included offense instruction and concludes that it was not warranted by the evidence

presented at trial, that conclusion is "axiomatically correct, as a matter of state law." *Bagby,* 894

F.2d at 795.  In the present case, the Michigan Court of Appeals' decision that Petitioner was not

entitled to an instruction on accessory after the fact was not an unreasonable application of clearly

established federal law, in light of the fact that accessory after the fact is not a lesser included

offense to first-degree murder under Michigan law.  *See David v. Lavinge,* 190 F. Supp. 2d 974, 985-

87 (E.D. Mich. 2002); *Rodgers,* 73 F. Supp. 2d at 784.  Petitioner is not entitled to habeas relief on

his third claim.

C

        In his fourth and final claim, Petitioner contends that he was deprived of his right to present

witnesses on his own behalf and to present a defense when the trial court refused to allow

Petitioner's aunt, Jocarrroll George, to testify at trial, because trial counsel had failed to include George's name on his pretrial alibi notice, as required by Mich.Comp. Laws § 768.20. Petitioner had wanted to call George to testify that Petitioner was at a funeral with her and other family members from 11:00 a.m. to 12:00 p.m., on July 29, 1999, which was during the time that King made his statement during a phone call in Petitioner's presence about wanting to commit an armed robbery.

The Michigan Court of Appeals rejected Petitioner's claim, finding that it was proper for the trial court to exclude George's testimony, because Petitioner's counsel failed to give timely notice that he would be calling George as an alibi witnsess, as required by Mich.Comp. Laws § 768.20(1) and (3). The Michigan Court of Appeals further rejected Petitioner's assertion that George was not an alibi witness to whom the alibi notice requirements would apply, because George would have provided an alibi defense to the conspiracy to commit an armed robbery charge. *People v. Bell,* No. 233234, Mich. App. LEXIS 2458, * 18-19 (Mich. Ct. App. Oct. 2, 2003).

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present his own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *see also Crane v. Kentucky,* 476 U.S. 683, 690 (1986) ("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'") (internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37,

42 (1996). Moreover, under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect. Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins,* 341 F.3d 507, 511-12 (6th Cir. 2003).

In the present case, the trial court barred Petitioner's aunt from testifying, because the alibi notice filed by Petitioner's counsel failed to name her as a possible alibi witness, as required by Mich. Comp. Laws § 768.20.

Petitioner first contends that the requirements of Michigan's alibi notice statute should not have applied to exclude George from testifying, because she was not an alibi witness. State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975). What is essential to establish the elements of a crime is a matter of state law. *See Sanford,* 288 F.3d at 862. Likewise, "[D]ue process does not require that a defendant be permitted to present any defense he chooses. Rather, states are allowed to define the elements of, and defenses to, state crimes. " *See Lakin v. Stine,* 80 Fed. Appx. 368, 373 (6th Cir. 2003) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 484-87 (2000); *McMillan v. Pennsylvania*, 477 U.S. 79, 84-86, (1986)). The circumstances under which a criminal defense may be asserted is thus a question of state law. *Id.*

In the present case, the Michigan Court of Appeals determined that Jocarroll George qualified as an alibi witness for whom the notice requirements of § 768.20 applied. This is a determination that this Court cannot second-guess and must therefore defer to on habeas review.

The Sixth Amendment Compulsory Process Clause does not create an absolute bar to the

preclusion of testimony of a defense witness as a sanction for violating a discovery rule. *See Taylor v. Illinois*, 484 U.S. 400, 410 (1988). There is a "significant difference" between the Compulsory Process Clause and other constitutional rights protected by the Sixth Amendment. While other Sixth Amendment rights shield a defendant from potential prosecutorial abuses, the right to compel the presence or testimony of a witness provides the defendant with a "sword" that can be used to rebut the prosecutor's case. "The decision whether to employ it in a particular case lies solely with a defendant." *Id.*

The U.S. Supreme Court in *Taylor* indicated that the principle that lies behind a defendant's right to present exculpatory evidence is also the source of the essential limits on that right:

> "[T]he adversary process could not function effectively without adherence to rules of procedure that govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case. The trial process would be a shambles if either party had an absolute right to control the time and content of his witnesses' testimony."

*Taylor*, 484 U.S. at 410-11.

The Supreme Court went on to rule that a state's interest in the orderly conduct of a criminal trial was sufficient to justify imposing and enforcing firm, although not inflexible, rules relating to the identification and presentation of evidence. *Taylor,* 484 U.S. at 411. The Court ruled that preclusion of a witness could be a proper sanction for a discovery violation. *Id.*

In *Taylor,* the Supreme Court indicated that in making a determination as to whether a defendant's Sixth Amendment right to compulsory process would be violated by a trial court's exclusion of alibi testimony, a court should balance the defendant's right to have witnesses testify on his behalf against "countervailing public interests", which would include "[T]he integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of

unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth determining function of the trial process . . . ." *Id.* at 414-15. Courts can also consider the ability with which one can comply with the [alibi notice] statute and whether any noncompliance was willful and motivated by a desire to gain a tactical advantage at trial. *Id.* at 415. The Supreme Court also recognized that the prosecution has an interest in "protecting itself against an eleventh hour defense." *Taylor,* 484 at 412 (*quoting Williams v. Florida*, 399 U.S. 78, 81-82 (1970)).

In the present case, Petitioner has failed to show that the trial court's exclusion of his alibi witness because of the failure to comply with the alibi notice provisions was contrary to, or an unreasonable application of, clearly established federal law so as to entitle him to habeas relief. *See Watley v. Williams,* 218 F.3d 1156, 1159-60 (10th Cir. 2000) (state appellate court reasonably applied *Taylor v. Illinois* in upholding the exclusion of alibi testimony for the violation of a state rule by not listing a witness as an alibi witness, even though the witness was on a list of potential witnesses and counsel's failure to list him on the alibi list was inadvertent); *Cox v. Wyrick*, 873 F.2d 200, 201-02 (8th Cir. 1989) (preclusion order entered by judge presiding at habeas petitioner's state court murder trial, preventing petitioner from giving alibi testimony, did not deprive petitioner of his due process guarantees under the Sixth Amendment; preclusion order was issued as sanction for petitioner's failure to respond to the state's pretrial motion to produce the names and addresses of alibi witnesses and the location of any alibi defense). Accordingly, Petitioner is not entitled to habeas relief on his fourth claim.

IV

The Court will deny the petition for writ of habeas corpus. The Court will also deny a

certificate of appealability to Petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further.  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong.  *Id.* at 484.  A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition.  *Castro v. United States,* 310 F.3d 900, 901 (6th Cir. 2002).  For the reasons stated in this opinion, the Court will deny Petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right.

This Court will also deny Petitioner's motion to reconsider this Court's previous decision to deny him a certificate of appealability with regards to his reverse-*Batson* claim that this Court rejected on the merits in its original decision.  As this Court indicated in its original decision, the United States Supreme Court has repeatedly held that peremptory challenges are not of a federal constitutional dimension.  *See U.S. v. Martinez-Salazar,* 528 U.S. 304, 311 (2000)*;Ross v. Oklahoma*, 487 U.S. 81, 88 (1988); *Gray v. Mississippi,* 481 U.S. 648, 663 (1987); *Stilson v. United States*, 250 U.S. 583, 586 (1919).  More importantly, "[t]here is no Supreme Court precedent clearly establishing that the success of a prosecutor's *Batson* challenge works any constitutional harm" in the absence of any showing that the seated juror was biased. *Frazier v. New York*, 156 Fed.Appx. 423, 425 (2nd Cir. 2005); *see also Vega v. Portuondo,* 120 Fed.Appx. 380, 383 (2nd Cir. 2005).

The Antiterrorism and Effective Death Penalty Act's (AEDPA) standard of review found in 28 U.S.C. § 2254 (d)(1) prohibits the use of lower court decisions in determining whether the state court decision is contrary to, or an unreasonable application of, clearly established federal law. *Miller v. Straub,* 299 F.3d 570, 578-579 (6th Cir. 2002). In *Miller,* the Sixth Circuit cited to the United States Supreme Court's decision in *Williams v. Taylor,* 529 U.S. 362, 412 (2000), in which the Supreme Court defined "clearly established federal law as determined by the Supreme Court" to mean the holdings of the Supreme Court. *Id.*

The Sixth Circuit has indicated that the standard for determining whether a habeas petitioner has made a substantial showing of the denial of a constitutional right, so as to be entitled to a certificate of appealability, is similar to the standard for determining whether a habeas petitioner is entitled to habeas relief pursuant to 28 U.S.C. § 2254 (d). In *Cooey v. Coyle,* 289 F.3d 882, 897 (6th Cir. 2002), the Sixth Circuit noted:

> "We assume that the standards of 28 U.S.C. § 2254 (d) are to be imported into the analysis [for determining whether a certificate of appealability should issue] under § 2253 (c)."

The Sixth Circuit concluded that in making a determination under § 2253(c) whether a habeas petitioner is entitled to a certificate of appealability, a court must ask whether the petitioner has made a "substantial showing" that the decision of the state court "was contrary to clearly established constitutional doctrine as declared by the Supreme Court." *Cooey,* 289 F.3d at 897.

In light of the fact that the Supreme Court has declined to recognize a constitutional right to exercise a peremptory challenge, Petitioner is not entitled to a certificate of appealability on his claim that the trial court refused to allow the defense counsel to make peremptory challenges in this case. *Vega,* 120 Fed. Appx. at 383. The Court will therefore deny Petitioner's motion for

reconsideration of this Court's earlier decision to deny Petitioner a certificate of appealability with respect to this claim.

V

The Court will therefore grant Petitioner's motion for reconsideration [Dkt. # 13] in part. However, having reviewed the pleadings, the lower court record, and the state appellate court decisions, this Court determines that the decision of the Michigan appellate courts was not contrary to, or an unreasonable application of clearly established federal law as to determined by the United States Supreme Court.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [Dkt. # 1] is **DENIED.**

It is further **ORDERED** that Petitioner's motion for reconsideration [Dkt. # 13] is **GRANTED** in part and **DENIED** in part.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

s/Thomas L. Ludington<br>
THOMAS L. LUDINGTON<br>
United States District Judge

Dated: September 8, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 8, 2008

s/Tracy A. Jacobs
TRACY A. JACOBS